IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |  | |
|---|---|---|---|
| ANDRE DESIRE, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | CV 120-150 | |
| | ) | | |
| SGT. MAGEE JAMALULLAH and | ) | | |
| JASON SMITH, | ) | | |
| | ) | | |
| Defendants. | ) | | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 26), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

**I.     PROCEDURAL BACKGROUND**

On December 28, 2020, the Court screened Plaintiff's complaint and allowed to proceed Plaintiff's Eighth Amendment claims for excessive force and deliberate indifference to medical needs against Defendants Bluitt, Magee Jamalullah, and Jason Smith. (Doc. no. 7.) When the Marshal could not locate Defendant Bluitt, the Court provided Plaintiff additional time to provide valid identifying information, but receiving nothing further from

Plaintiff, dismissed Defendant Bluitt.  (See doc. nos. 22, 23, 25.)

When Defendants Jamalullah and Smith filed their motion for summary judgment, the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding.  (See doc. no. 27.)  The Court also granted Plaintiff an extension of time to respond to Defendants' motion and again explained the rights and requirements associated with responding.  (Doc. nos. 29-30.)  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[1]

In accordance with Local Rule 56.1, Defendants submitted a Statement of Material Facts ("SMF") in support of their summary judgment motion.  (Doc. no. 26-2.)  Because Plaintiff did not file a responsive statement, the Court deems admitted all portions of Defendants' statement having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[2]  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow

---

[1]The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its December 28, 2020 Order.  (Doc. no. 7, pp. 5-6.)

[2]Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(1) & (4).

2

Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).  Defendants continue to shoulder the burden of demonstrating the absence of any genuine issue of material fact, and the Court will review the entire record "to determine if there is, indeed, no genuine issue of material fact."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

## II.     FACTUAL BACKGROUND

The events giving rise to this lawsuit occurred while Plaintiff was housed in ASMP Unit 3B during the period of December 2018 to September 2019.  (See generally Lewis Aff.)  At that time, Defendant Jamalullah was a sergeant, Defendant Smith was a Correctional Emergency Response Team ("CERT") officer, and Dr. Lewis was Medical Director of the Georgia Department of Corrections.  (Id. at ¶ 3; Magee Aff. ¶ 3; Smith Aff., ¶ 3.)

### A.     Prequel

In December 2018, Security Officer Bluitt refused to open the gate to the dining hall, leaving Plaintiff and approximately fifty other inmates in the rain in sub thirty-degree temperatures for fifteen minutes.  (Doc. no. 1, p. 5.)  Plaintiff complained to Defendant Jamalullah and Lt. Eason.  (Id.)  In response, Officer Bluitt stated "I will get you, don't worry I got something for you!"  (Id.)  Due to Officer Bluitt's threats, Plaintiff feared harm and requested Lt. Eason not place Officer Bluitt in Plaintiff's unit, building 14B.  (Id.)

Later, Officers Bluitt and Warren began harassing Plaintiff, however Plaintiff walked away instead of responding.  (Id.)  A few minutes later, Officer Bluitt called the inmates to chapel for a Christmas concert, and as Plaintiff departed his dorm, Officer Bluitt pushed Plaintiff against the wall.  (Id.)  Plaintiff did not resist or place his hands on Officer Bluitt.  (Id.)  Officer Bluitt signaled to Officer Warren, who choked and slammed Plaintiff to the floor, resulting in Plaintiff losing consciousness.  (Id. at 6.)

3

### B. Events Giving Rise to Suit

On December 20, 2018, at approximately 6:50 P.M. Defendants Jamalullah and Smith received a 10-78 call requesting officer assistance at 14B Hallway of ASMP. (Magee Aff. ¶ 4; Smith Aff., ¶ 4.) Defendant Jamalullah arrived within two minutes of the call, and Officer Bluitt told her Plaintiff pushed Officer Bluitt while signing inmates out for chapel. (Magee Aff. ¶ 4.) Defendant Jamalullah observed CERT Officer Warren securing Plaintiff by placement of his hands on Plaintiff's upper body, not his throat, and Plaintiff was conscious. (Id.) Nor did it appear to Defendant Jamalullah that Plaintiff had recently been choked or lost consciousness. (Id.) Plaintiff, despite the initial restraint by Officer Warren, continued to act unruly, agitated, and combative, leading Defendant Jamalullah to handcuff Plaintiff. (Id.) Defendant Jamalullah seated and pressed Plaintiff against a wall until additional officers arrived to secure Plaintiff and transport him to the medical unit for a use of force examination. (Id.)

As additional ASMP staff arrived, including Defendant Smith, video recording of the interaction commenced. (Id. at ¶ 5; Smith Aff., ¶ 4; Smith Aff. Video 1.) Plaintiff continuously yelled about his initial confrontation with Officer Bluitt, claiming the officer attacked and choked him. (Smith Aff. Video 1.) Plaintiff has no demonstrable injuries in the video footage. (Id.) Defendant Smith and Officer Johnson approached Plaintiff and waited for instructions before receiving confirmation to assist Plaintiff to the medical unit. (Id., 00:50; Smith Aff., ¶ 6.)

Initially, Defendant Smith and Officer Johnson assisted Plaintiff off the ground to walk with him to the medical unit, however, Plaintiff immediately returned to the ground stating "I have medical injuries." (Smith Aff. Video 1, 01:28-01:38.) Shortly thereafter, a

4

first wheelchair is brought to Plaintiff's location and Defendant Smith and Officer Johnson lifted Plaintiff by his arm and shoulders into the wheelchair. (Id., 02:09-02:14.) Officers attempted to push Plaintiff in the wheelchair; however, no progress was made as Plaintiff left his feet on the ground before scooting off the first wheelchair. (Id., 02:30-02:50.)

When a second wheelchair arrived, Defendant Smith instructed Plaintiff to get in the chair or the officers would place him in the chair. (Id., 04:01-04:22.) Plaintiff responded by yelling about his back spasming. (Id., 04:22-04:24.) The officers lifted Plaintiff multiple times by his upper body to place him in the chair, while Plaintiff's lower body remained limp impeding the officers' efforts. (Id., 04:25-04:42.) Defendant Smith began to pull the wheelchair from behind as Officer Johnson lifted Plaintiff's legs in the air. (Id., 04:42-04:57.) Officer Johnson returned Plaintiff's legs to the ground, which dragged behind Plaintiff as he made no effort to lift his legs. (Id., 04:58.)

As the officers exited the initial building in route to the medical unit, Plaintiff slid forward out of the wheelchair, and the officers paused their escort. (Id., 05:30.) Defendant Smith again commanded Plaintiff to return to the wheelchair, and when Plaintiff failed to provide an affirmative response, Defendant Smith and Officer Johnson lifted Plaintiff back into the wheelchair. (Id., 06:25-06:38.) Defendant Smith and Officer Johnson resumed Plaintiff's escort, but now the officers each positioned one arm under Plaintiff's armpits to hold Plaintiff up in the wheelchair as they pushed it from the sides. (Id., 07:00-08:03.) Plaintiff continued to yell throughout the escort, complaining of pain to his arms and back and threatening to sue the officers present, but made no effort to correct his posture in the wheelchair. (Id.)

5

After numerous instructions to "sit up" in the wheelchair, Defendant Smith and Officer Johnson swapped positions, allowing Defendant Smith to pull the wheelchair from behind. (Id., 08:03.) During the transition, Defendant Smith inadvertently hooked Plaintiff's arm around the back corner of the wheelchair, which became accentuated as Plaintiff slid down the wheelchair. (Id.) Defendant Smith pulled the wheelchair for approximately one minute before again stopping. (Id., 08:04-09:14.) Officers again commanded Plaintiff to "sit up" in the chair, to which Plaintiff responded, "I can't". (Id., 09:15-09:42.)

Defendant Smith and Officer Johnson continued pulling the wheelchair from behind. (Id., 09:03-10:44.) Shortly thereafter, Defendant Smith and Officer Johnson again broke from pulling the wheelchair. (Id., 10:44.) Further commands for Plaintiff to "sit up" in the wheelchair were given, but Plaintiff restated his inability to move his legs. (Id., 10:45-11:01.) Defendant Smith and Officer Johnson lifted Plaintiff back into an upright position and repeatedly commanded Plaintiff to bend his knees. (Id., 11:01-11:15.) When Plaintiff continued to assert his inability to bend his knees, Defendant Smith and Officer Johnson resumed pulling the wheelchair to the medical unit as Plaintiff slowly slouched back down the wheelchair. (Id., 11:15-13:50.)

After repeated requests to Lt. Herman to have the officers assist him back into a seated position, Defendant Smith and Officer Johnson again lifted Plaintiff back into a fully seated position. (Id., 13:51-14:10.) Defendant Smith and Officer Johnson proceeded to pull Plaintiff, with his feet dragging on the ground, to the medial unit without further interruption. (Id., 14:11-18:52.) Throughout the transport, Plaintiff consistently berated the officers and threatened to sue them over their involvement.

6

A few minutes after Plaintiff's arrival, an examination room in the medical unit became available. (Id., 24:00.) Defendant Smith and Officer Johnson again lifted Plaintiff upright in his wheelchair to maneuver Plaintiff into the exam room. (Id., 24:26-24-38.) Throughout Plaintiff's examination, the video camera remained outside the room and pointed at the floor. (Id., 24:55-47:58.) The camera briefly returned to Plaintiff to show Defendant Smith and Officer Johnson, at the request of medical personal, lifting and placing Plaintiff onto the examination bed. (Id., 30:50-31-37.) While audio of the examination is unclear over the camera, Defendants Smith and Jamalullah aver no one present at the examination attempted to influence the medical staff. (Smith Aff. ¶ 17; Magee Aff. ¶ 7.)

After the medical staff completed Plaintiff's assessment and cleared him, the camera returned to Defendant Smith informing Plaintiff he would be assisted to his feet and then his wheelchair. (Smith Aff. Video 1, 47:58-48:23.) Defendant Smith and Officer Johnson lifted Plaintiff from the table, sitting him in a wheelchair and positioning his feet on the footholds. (Id., 48:23-48:50.) For the first few minutes of the return transport, Defendant Smith successfully pushed Plaintiff's wheelchair with no complications; however, as Defendant Smith was about to exit a building, Plaintiff thrusted himself off the wheelchair. (Id., 48:51-51:00.) Defendant Smith informed Plaintiff he would be placed back in his wheelchair before Defendant Smith and Officer Johnson again lifted Plaintiff back into the wheelchair and resumed pulling the wheelchair. (Id., 51:00-53:50.)

Now outside and between buildings, Plaintiff again slid out of the wheelchair and onto the ground. (Id., 53:52.) After Plaintiff lay on the ground for a few minutes, a stretcher cart arrived at the location and Defendant Smith and Officer Johnson lifted Plaintiff onto the cart. (Id., 56:10- 56:35.) The cart carried Plaintiff most of the distance to Plaintiff's new

7

dormitory.  (Id., 56:35-1:01:33.)  Defendant Smith instructed Plaintiff to walk to his cell or if he did not, he would be carried.  (Id., 1:01:33-1:01:56.)  Defendant Smith and Officer Johnson lifted Plaintiff by his feet and shoulders and carried him into his new cell, and placed Plaintiff on a bed inside.  (Id., 1:01:57-1:03:01.)

### C. Plaintiff's Medical History

Plaintiff maintained a significant medical history before and after December 20, 2018. Relevant to Plaintiff's asserted injuries, on February 8, 2016, Plaintiff underwent an MRI of his lumbar spine showing post-surgical changes, disc herniation, neuroforaminal narrowing, and multilevel degenerative spondylosis.  (Lewis Aff. ¶ 4; Lewis Aff., Ex. "B".)

On the morning of December 20, 2018, at approximately 7:45 am, Physician Assistant ("PA") Cain saw Plaintiff for complaints of lower back pain.  (Lewis Aff. ¶ 5; Lewis Aff., Ex. "C".)  Subjectively, Plaintiff reported worsening in his back pain over the prior four months and episodes of his legs giving out.  (Lewis Aff. ¶ 5; Lewis Aff., Ex. "C".) PA Cain noted a decreased range of motion in Plaintiff's left leg, found positive tender to palpation in his lumbar spine and left hip, a positive straight leg test, and diagnosed Plaintiff with degenerative disc disease.  (Lewis Aff. ¶ 5; Lewis Aff., Ex. "C".)  PA Cain also wrote a consultation request for Plaintiff to receive an MRI on his lumbar spine.  (Lewis Aff., ¶ 5; Lewis Aff., Exs. "C" and "D".)

Later the same day at approximately 7:20 pm, Plaintiff returned to the medical unit for a use of force assessment concerning the events described in part II. B., supra.  (Lewis Aff., ¶ 6.)  PA Sonya Holston examined Plaintiff, for what Plaintiff described as an attack by an officer during which he was choked.  (Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".)  PA Holston found Plaintiff had an elevated blood pressure and heart rate and noted Plaintiff was

8

uncooperative.  (Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".)  PA Holston noted no injuries to Plaintiff's neck, abdomen, or maxilla-facial areas.  (Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".)  PA Holston also noted Plaintiff's complaint of lower back pain was consistent with his complaints prior to the use of force incident.  (Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".)  Additionally, PA Holston noted Plaintiff could in fact move his legs.  (Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".)  Ultimately, PA Holston noted "no findings from use of force," "no obvious injuries from use of force," and Plaintiff's complaints of pain were not new compared to his prior medical history.  (Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".)

Approximately five weeks after the use of force incident, Plaintiff returned to the medical unit complaining of shoulder pain.  (Lewis Aff. ¶ 7; Lewis Aff., Ex. "F".)  The treating PA noted Plaintiff's use of a wheelchair but observed no acute distress.  (Lewis Aff. ¶ 7; Lewis Aff., Ex. "F".)  Plaintiff displayed normal range of motion in his spine and full range of motion and strength in his left shoulder.  (Lewis Aff. ¶ 7; Lewis Aff., Ex. "F".)  The PA also noted Plaintiff capable of removing his shirt without difficulty.  (Lewis Aff. ¶ 7; Lewis Aff., Ex. "F".)  Ultimately, the PA assessed Plaintiff with shoulder and chronic neck pain and prescribed him pain medication.  (Lewis Aff. ¶ 7; Lewis Aff., Ex. "F".)

On February 21, 2019, Plaintiff saw PA Cain, expressing further complaints of shoulder pain.  (Lewis Aff. ¶ 9; Lewis Aff., Ex. "H".)  PA Cain noted no acute distress and no new exam findings but diagnosed Plaintiff with degenerative disc disease and left arm pain.  (Lewis Aff. ¶ 9; Lewis Aff., Ex. "H".)   On September 11, 2019 and December 23, 2020 Plaintiff underwent MRIs of his left shoulder.  (Lewis Aff. ¶¶ 10-11; Lewis Aff., Exs. "I" and "J".)  The MRIs revealed mild fraying and a likely torn bicep tendon.  (Lewis Aff. ¶¶ 10-11; Lewis Aff., Exs. "I" and "J".)  Since December 2018, Plaintiff has received

9

conservative treatment on his shoulder including physical therapy and a steroid injection, but no records displayed Plaintiff having had surgery or a contemplation for surgery. (Lewis Aff. ¶ 12; Lewis Aff., Ex. "A".)

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the

10

pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendants Are Entitled to Summary Judgment on the Merits of Plaintiff's Eighth Amendment Claims

Defendants contend they are entitled to summary judgment because they did not violate Plaintiff's Eighth Amendment rights during the encounter, and they are entitled to qualified immunity even if a violation occurred. (Doc. no. 26-1, pp. 18-24.) The Court finds Defendants are entitled to summary judgment because no Eighth Amendment violation occurred during the encounter. These findings moot the qualified immunity defense.

#### 1. Plaintiff's Eighth Amendment Excessive Force Claim

##### a. Overview of Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force

11

are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

12

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

> **b.  The Evidence Does Not Support a Reliable Inference of Wantonness in the Infliction of Pain When Viewed in a Light Most Favorable to Plaintiff**

Defendants did not use constitutionally excessive force against Plaintiff. As an initial matter, Defendants used no more than *de minimis* force. Indeed, physical contact in securing and transporting a non-compliant inmate who required no medical treatment is not the sort of force "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10; see also Wilkins, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") Viewing the

13

facts in the light most favorable to Plaintiff, Defendants are entitled to summary judgment because the record does not support a reliable inference of wantonness in the infliction of pain, and no reasonable juror could find Defendants applied force maliciously and sadistically to cause harm.

Furthermore, consideration of the multiple Hudson factors used to evaluate the subjective component of an excessive force claim shows Defendants are entitled to summary judgment. First, Plaintiff's injuries resulting from any force of the named Defendants were not severe. As discussed in § II.B.2.c, infra, Plaintiff had a plethora of medical issues present before this use of force incident. While Plaintiff complained of injury and pain throughout his interactions with ASMP officers, the contemporaneous use of force medical examination showed no related injury requiring medical treatment. (Lewis Aff. ¶ 6.)

The Court will turn next to the fourth Hudson factor, i.e., the threat reasonably perceived by responding officials. Upon arrival to the scene, Defendants were both informed Plaintiff had pushed Officer Bluitt. The objective video evidence shows Plaintiff (1) continuously yelled and fidgeted in an agitated and unruly manner; and (2) refused to comply with repeated demands to assist the officers in their transport of him. The threat reasonably perceived by Defendants, therefore, was an agitated inmate, whom they believed used force against a fellow officer, now refusing Defendants' repeated commands to quell the situation and assist in escorting him to the medical department. No reasonable juror could find otherwise.

Having established the threat reasonably perceived, the three remaining factors fall easily into place. Any reasonable juror would conclude a need for force existed in these circumstances. Defendants' use of force to restrain and transport Plaintiff to the medical unit

14

was necessary as Plaintiff refused to deescalate the situation and assist Defendants in his escort to the medial unit. Indeed, Plaintiff made constant attempts to undermine Defendants' efforts by continuously refusing to maneuver himself or maintain posture in the wheelchairs. Further, Defendants made reasonable efforts to temper the severity of a forceful response, such as consistently requesting Plaintiff maneuver or reposition himself before taking such responsibility upon themselves. Additionally, Defendants attempted to use not one, but two wheelchairs for Plaintiff's transportation. This approach minimized the danger for everyone significantly, including Plaintiff, and was indisputably necessary because of Plaintiff's refusal to escort himself to the medical unit and the risk of carrying a dead-weight, agitated inmate several hundred yards. No reasonable juror could disagree with any of these findings.

For the reasons stated above, the evidence, when viewed in the light most favorable to Plaintiff, does not "go beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322). Nor does it "support a reliable inference of wantonness in the infliction of pain . . . ." Id. Defendants used a reasonable, minimal, amount of force to restore order as quickly as possible, and to ensure Plaintiff could receive medical treatment if needed. Because Plaintiff cannot satisfy the subjective component of an Eighth Amendment excessive force claim, summary judgment should be granted to Defendants.

### 2.    Plaintiff's Deliberate Indifference Claim

#### a.    Deliberate Indifference Standard

The Eighth Amendment requires that prisoners are afforded adequate food, clothing, shelter, and medical care, and prison officials must take reasonable measures to ensure prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To survive Defendants'

motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude (1) he had a serious medical need – the objective component, (2) Defendants acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by Defendants' wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

To satisfy the subjective component that Defendants were deliberately indifferent, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223. "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind." Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy,

16

negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").

In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

### b.  Defendants Are Entitled To Summary Judgment Because Plaintiff Merely Has a Disagreement over the Course of Treatment Prescribed

Plaintiff contends Defendants prevented the PA and ASMP medical staff from providing medical care by instructing them to not document his complaints and clear him medically. (Doc. no. 1, p. 6.)

It is undisputed that Plaintiff was brought to the medical unit and examined by a PA immediately after the alleged use of force. (Smith Aff. Video 1, 24:55-47:58.) Although Plaintiff alleges Defendants instructed the PA and the nurse to not document Plaintiff's complaints of injury and to clear him medically, the medical records reveal detailed notes of PA Holston performing the examination. (Doc. no. 1, p. 6; Lewis Aff. ¶ 6; Lewis Aff., Ex. "E".) Moreover, Plaintiff has received conservative medical treatment including physical therapy, a steroid injection, and pain medication since the December 18th altercation. (Lewis Aff. ¶ 12; Lewis Aff., Ex. "A".)

In sum, the record establishes summary judgment should be granted to Defendants on the deliberate indifference claim because Plaintiff received an examination and treatment right after the use of force incident, and Plaintiff received continuing treatment thereafter for his complaints, all without interference from Defendants.

### c.  Plaintiff's Claim Also Fails Because He Cannot Establish Injury

Moreover, to the extent Plaintiff alleges liability for deliberate indifference based on a delay in receiving additional treatment, he has failed to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." See Hill, 40 F.3d at 1188. Stated otherwise, even taking Plaintiff's assertions as true, Plaintiff's claim also fails because he does not offer any evidence he was injured by Defendants' acts or omissions with

18

respect to any delay in obtaining medical treatment. See Cannon v. Corizon Med. Servs., 795 F. App'x 692, 698 (11th Cir. 2019) (*per curiam*). Plaintiff asserts in his complaint Defendants instructed ASMP medical department staff not to properly treat Plaintiff during the use of force examination and not to properly document his injuries. (See doc. no. 1). Plaintiff states Defendants' actions caused additional injuries to his left shoulder, back, knee, and neck. (Id. at 6.) No medical evidence supporting Plaintiff's conjecture exists in the record, and the undisputed facts provide no basis for a reasonable juror to find Plaintiff suffered any exacerbation or harm from Defendants' actions or the course of his treatment.

No medical provider suggested any type of surgery or non-conservative treatment for Plaintiff in any of his medical appointments since the incident. Indeed, even if the Court takes as true Plaintiff's allegations of Defendants undermining his use of force examination, Plaintiff's next appointment, a few weeks later, noted no acute distress, full range of motion and strength in his shoulder, and the PA prescribed only additional pain medication.

Although Plaintiff complains of some residual pain and limited range of motion as a result of injuring his arm, he offers no medical evidence that different treatment during his examination would have led to different results in his health. Plaintiff cannot create a genuine dispute of material fact based on his factually unsupported beliefs. See Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.")

In sum, Plaintiff cannot meet his burden of proof on all elements of his Eighth Amendment claim.

### 3. Qualified Immunity and Damages under the PLRA

The Court need not address Defendants' qualified immunity and damages arguments because Defendants are entitled to summary judgment on the merits of Plaintiff's excessive force and deliberate indifference claims.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 26), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMENEDED this 10th day of February, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA